UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

```
*****************************
Thea Broadus,               *
                            *
        Plaintiff           *       COMPLAINT
                            *       Jury Trial Requested
v.                          *
                            *
Oracle America, Inc.,       *
                            *
        Defendant           *
                            *
*****************************
```

NOW COMES the plaintiff Thea Broadus, by and through her attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

**I.    Parties**

1. The plaintiff Thea Broadus resides in Greenland, New Hampshire, at 256 Great Bay Road, Greenland, New Hampshire. Ms. Broadus is African-American and a person of color.

2. The defendant Oracle America, Inc. is a Delaware corporation with a principal place of business located at 500 Oracle Parkway, Redwood City, California.

**II.   Jurisdiction and Venue**

3. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331. The Court may exercise supplemental jurisdiction over Ms. Broadus' State law claim.

4. Ms. Broadus primarily performed her employment duties for the defendant in her New Hampshire home. But for the unlawful employment practices alleged herein, Ms. Broadus would have continued to perform her employment duties for the defendant in New Hampshire. Venue is therefore proper in this judicial district pursuant to 42 U.S.C. §20003-5(f)(3).

1

### III.    Facts

5. Ms. Broadus began her employment with Infor (US), Inc. (Infor) as an account executive in or around January of 2014. In this position, Ms. Broadus sold software to the health care industry.

6. Ms. Broadus performed well in her position, exceeding her quotas and earning Infor's recognition. In FY 2016, Ms. Broadus' sales totaled 120.02 percent of her quota. In FY 2017, Ms. Broadus' sales totaled 116.42 percent of her quota. Infor designated Ms. Broadus for inclusion in its "Circle of Excellence" each of these years. The "Circle of Excellence" was an honor reserved for the company's top 100 account executives.

7. In or around January of 2017, Michael Young became Ms. Broadus' supervisor at Infor. Mr. Young is a Caucasian male whom the Infor hired as a sales director that month (January 2017). Ms. Broadus was the sole African-American account executive whom Infor assigned Mr. Young to supervise. When Mr. Young became Ms. Broadus' supervisor, Ms. Broadus was the most senior of the account executives supervised by Mr. Young with the highest productivity.

8. Despite Ms. Broadus' record of success at Infor, Mr. Young was condescending and bullying to her and hindered her ability to perform her job. Ms. Broadus reported her troubles with Mr. Young to Infor Human Resources, stating as follows to Infor Human Resources regarding her insight into Mr. Young's motives for subjecting her to negative treatment: "I don't know why. I don't know whether it's because I'm a woman or whether it's because I'm the only African American on the sales team."

9. Ms. Broadus reported concerns about Mr. Young's negative treatment of her to Infor Human Resources at least three (3) times. Infor Human Resources failed to take appropriate remedial action.

10. Rather, Infor continued to subject Ms. Broadus to adverse employment actions, revoking accounts from her, reassigning her accounts to Caucasian account executives with less experience, reassigning her to a supervisor on the West coast despite the fact that she was an East coast account executive, placing her on an unwarranted performance improvement plan, and on or about May 11, 2018, ultimately terminating her position as an account executive.

11. Ms. Broadus timely filed a May 15, 2018, Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) against Infor, alleging that Infor subjected her to race discrimination and unlawfully retaliated against her for reporting discriminatory treatment.

12. On or about June 11, 2018, approximately one month after Infor told Ms. Broadus that she no longer had a position with Infor as an account executive, Ms. Broadus began employment with the defendant Oracle America, Inc. (Oracle). Ms. Broadus worked in Infor's health care division, but she worked in the high technology division at Oracle, such that the clients she served at Oracle were different than the clients she served while in the employ of Infor.

13. On or about August 23, 2018, the EEOC dismissed Ms. Broadus' Charge of Discrimination against Infor and issued her a Notice of Right to Sue. Ms. Broadus filed her suit against Infor with this Court on or about November 19, 2018, and it remains pending before this Court, Broadus v. Infor (US), Inc., Case No. 1:18-cv-01079.

14. After receiving notice of the EEOC's dismissal of the Charge against Infor and the Notice of Right to Sue, Infor Human Resources investigated Ms. Broadus' employment status and discovered that Ms. Broadus was employed by the defendant.

15. Infor Human Resources contacted the defendant to confirm that the defendant employed Ms. Broadus. In Infor's communications with the defendant, Infor advised the defendant that Ms. Broadus had alleged race discrimination against Infor and had filed a Charge of Discrimination against Infor.

16. On or about August 29, 2018, Sonia Pedro from Oracle Human Resources asked Ms. Broadus if she remained actively working for Infor. Ms. Broadus truthfully responded that she was not working for Infor.

17. Ms. Broadus called her supervisor at Oracle and left a voice mail message asking why Oracle Human Resources was inquiring as to whether she were working for Infor. Ms. Broadus' supervisor never responded to the voice mail.

18. On September 6, 2018, Oracle sent an email to Ms. Broadus' personal "gmail" account as opposed to her Oracle email account. The email stated in pertinent part: "as part of our employment process, Oracle obtains or asks others on its behalf to obtain <u>consumer reports regarding applicants</u>. These reports assist us in evaluating individuals for employment with Oracle. We are enclosing a copy of the <u>consumer report</u> we obtained in conjunction with your consideration for employment; … We have or will be completing our <u>review of your application</u> within the next few days, and may take action based on the enclosed report." Emphasis added.

19. Oracle's e-mail reads as though it pertained to Ms. Broadus' *credit history* and her *hiring,* notwithstanding that Ms. Broadus had been employed by Oracle for months.

20. Ms. Broadus did not see the email in her inbox because she was not expecting it and did not regularly check her gmail account.

21. The report attached to the September 6, 2018, email was <u>not</u>, in fact, a "consumer report" but was instead an "Employment" report from a company called "HireRight."

22. Moreover, Oracle did not obtain the HireRight report in the "consideration of employment" process. Oracle only sought the report on or about September 5, 2018,--months after Ms. Broadus' employment with Oracle began <u>but only days after Infor informed Oracle that Ms. Broadus had alleged race discrimination against Infor and had filed a Charge of Discrimination against Infor</u>.

23. The HireRight report erroneously showed Ms. Broadus as having been employed with Infor from January 6, 2014 "to present."

24. From September 6, 2018, to September 18, 2018, no one contacted Ms. Broadus to notify her of any report indicating that as of "present" she still worked for Infor.

25. On or about September 18, 2018, Ms. Broadus received another telephone call from Ms. Pedro in which Ms. Pedro told Ms. Broadus: that Oracle had sent Ms. Broadus an email notifying her of a perceived "conflict of interest" relating to her allegedly working for Infor and Oracle simultaneously; that Oracle had given Ms. Broadus 5 days from delivery of the email to respond to the notice before adverse action was taken by Oracle; and that Ms. Broadus had failed to respond.

26. This news stunned Ms. Broadus. Ms. Broadus informed Ms. Pedro: that she had received no such email notice; that she had <u>not</u> simultaneously worked for Infor and Oracle; and that she wanted to know what she could do to correct Oracle's error

5

27. Ms. Pedro ominously responded that she did not know what could be done and that she would have to "see about next steps." Ms. Broadus asked what the "next steps" were and Ms. Pedro replied only that she couldn't discuss them.

28. On September 27, 2018, Mr. Blake called Ms. Broadus to inform her that she was being terminated effective immediately.

29. Ms. Broadus asked Mr. Blake why he never responded to her voice mail message to him or addressed with her Human Resources' alleged concern over dual-employment.

30. Mr. Blake responded simply that "he couldn't" but confirmed that he knew that Infor Human Resources and Oracle Human Resources had "discussing" Ms. Broadus.

31. On September 27, 2018, Oracle sent Ms. Broadus an e-mail stating in relevant part:

> "As part of your <u>continued employment</u>, we may require that a <u>consumer report</u> be obtained during your employment with us….<u>It recently came to Oracle's attention</u> that you may still be employed with your former employer, Infor. As a result of this report, we conducted <u>a supplemental background check</u> which confirmed that you were still working for Infor as of September 6, 2018. <u>On September 6, 2018, Oracle sent you a pre-adverse action notice. To date you have not responded to that notice or provided Oracle any information to refute that you are presently employed by both Oracle and Infor</u>.
>
> This is to advise you that your employment is being terminated effective September 27, 2018." (Emphasis added).

32. This email contains multiple false statements. First, Ms. Broadus informed Ms. Pedro <u>multiple</u> times that she was <u>not</u> simultaneously employed by both Infor and Oracle. Second, the defendant never presented the September 6, 2018, e-mail to Ms. Broadus as a pre-adverse action notice. Third, Ms. Broadus prevailed upon Oracle Human Resources to allow her to correct Oracle's alleged misunderstanding about her employment status, but Oracle declined Ms. Broadus the opportunity to do so.

33. Ms. Broadus filed a Charge of Discrimination against Oracle with the United States Equal Employment Opportunity Commission on or about March 25, 2019. Exhibit A.

34. The EEOC mailed Ms. Broadus a Notice of Right to Sue with respect to her Charge of Discrimination against Oracle on April 10, 2019, which she received on April 12, 2019. Exhibit B. The within lawsuit is filed with 90 days of Ms. Broadus' receipt of the Notice of Right to Sue, as required.

## COUNT I

### (Retaliation in Violation of Title VII)

35. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

36. Under Title VII, an employer cannot take an adverse employment action against an employee because the employee opposed any unlawful employment practice or filed a Charge of Discrimination.

37. The defendant Oracle fired Ms. Broadus because it learned from Infor that she had opposed race discrimination at Infor and that she filed a Charge of Discrimination against Infor.

38. As a direct and proximate result of the defendant's retaliation in violation of Title VII, Ms. Broadus has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life.

39. Ms. Broadus is further entitled to punitive damages because the defendant fired her with malice and/or with reckless indifference to her federally protected rights.

## COUNT II

### (Retaliation in Violation of New Hampshire Law Against Discrimination)

40. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

41. Under RSA 354-A:19, an employer cannot take an adverse employment action against an employee because the employee opposed any unlawful employment practice or filed a Charge of Discrimination.

42. The defendant Oracle fired Ms. Broadus because it learned from Infor that she had opposed race discrimination at Infor and that she filed a Charge of Discrimination against Infor.

43. As a direct and proximate result of the defendant's retaliation in violation of Title VII, Ms. Broadus has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life.

44. Ms. Broadus is further entitled to enhanced compensatory damages because the defendant fired her with willful or reckless disregard of her RSA 354-A rights.

WHEREFORE, the plaintiff Thea Broadus respectfully prays this Honorable Court:

A. Schedule this matter for trial by jury, and after trial;

B. Find the defendant liable for retaliation under Title VII;

C. Find the defendant liable for retaliation under RSA 354-A;

D. Award the plaintiff damages for lost wages, lost earning capacity, and lost employment benefits;

E. Award the plaintiff compensatory damages, including damages for emotional distress, humiliation, inconvenience, and loss of enjoyment of life;

F. Award the plaintiff punitive damages;

G. Award the plaintiff enhanced compensatory damages;

H. Award the plaintiff her reasonable attorney's fees;

I. Award the plaintiff interest and costs; and

J. Grant the plaintiff such other and further relief as is just and equitable.

Respectfully submitted,
THEA BROADUS
By her attorneys,
DOUGLAS, LEONARD & GARVEY, P.C.

Date:  July 10, 2019            By:   /s/ Benjamin T. King
Benjamin T. King, NH Bar #12888
14 South Street, Suite 5
Concord, NH 03301
(603) 224-1988
benjamin@nhlawoffice.com